# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| ANGÉLICA M. GONZÁLEZ BERRIOS,<br><br>**Plaintiff,**<br><br>v.<br><br>MENNONITE GENERAL HOSPITAL, INC., et al.,<br><br>**Defendants** | **CIVIL NO.** 18-1146 (RAM) |

## OPINION AND ORDER

RAÚL M. ARIAS-MARXUACH, District Judge

Pending before the Court are defendant Mennonite General Hospital, Inc.'s *Motion for Protective Order Under Rule 26(C) Of the F.R.C.P.* and plaintiff Angélica González-Berrios' *Motion Requesting In-Camera Review* as well as related submissions in opposition or support of these motions. (Docket Nos. 74 and 77).

For the reasons set forth below, the Court **GRANTS** the Hospital's *Motion for Protective Order Under Rule 26(C) Of the F.R.C.P.* and **DENIES** Ms. González-Berrios' *Motion Requesting In-Camera Review*. However, Plaintiff is granted until October 15, 2019 to take a Fed. R. Civ. P. 30(b)(6) of Mennonite General Hospital, Inc. Plaintiff may apply for relief from the protective order within fourteen (14) days after taking the Fed. R. Civ. P.

30(b)(6) deposition. The Hospital shall respond to any such application within seven (7) days of its filing.

## I. BACKGROUND

This is an action seeking damages for alleged medical malpractice invoking the Emergency Medical Treatment and Active Labor Act ("EMTALA"), 42 U.S.C. § 1395dd, and Puerto Rico's general tort statute, Article 1802 of the Puerto Rico Civil Code. (Docket No. 4 ¶¶ 159, 169, 186, 199, 206, 215, 228, and 239). Plaintiff Angélica González-Berrios ("González-Berrios") filed an *Amended Complaint* against the Mennonite General Hospital ("the Hospital"), Emergency Services Group, Inc., and five (5) individual doctors, as well as their spouses and conjugal partnerships, when applicable (collectively, "Defendants"). (Docket No. 4 ¶¶ 18, 24, 25, and 27). Succinctly stated, the *Amended Complaint* avers that Ms. González-Berrios suffered damages due to Defendants' failure to diagnose and treat her Cauda Equina Syndrome despite four (4) visits to the Hospital's emergency room. (Docket No. 4 ¶¶ 1-11).

The Hospital's *Motion for Protective Order* arises from Ms. González-Berrios' attempt to depose the Mennonite Health System's Chief Executive Officer ("CEO"), Mr. Pedro L. Meléndez-Rosario ("Mr. Meléndez"). (Docket No. 74). The deposition subpoena directed at Mr. Meléndez identifies the matters to be covered at the deposition:

> About all the facts alleged in the complaint; your knowledge about, protocols, policies and procedures of Mennonite General Hospital; the functioning of the Emergency Room; and all other information that may be pertinent for the discovery process in the case. (Docket No. 74-2 at 1).

According to his unsworn statement under penalty of perjury, Mr. Meléndez is ultimately responsible for four (4) hospitals and over 3,800 employees, among other operations. (Docket No. 74-1 ¶¶ 2 and 5). However, he is not directly involved in the day-to-day operations of the Hospital and instead relies on a managerial team. (Docket No. 74-1 ¶¶ 4-6). Mr. Meléndez's unsworn statement specifically denies that he has knowledge regarding the function of the emergency room or "about the protocols, policies and procedures" in place at the Hospital. (Docket 74-1 ¶ 7).

The Hospital invoked Fed. R. Civ. P. 26(c) and the apex deposition doctrine to contend that a protective order should be issued because Plaintiff has not shown that Mr. Meléndez has "unique personal knowledge of facts unavailable from other sources." (Docket No. 74 at 3). As an alternate remedy, Defendant requested that the deposition be delayed until Ms. González-Berrios has exhausted other means of discovery through employees with relevant knowledge or the deposition of a designated corporate representative under Fed. R. Civ. P. 30(b)(6). (Docket No. 74 at 7).

In turn, Plaintiff filed a *Motion Opposing Request for Protective Order* in which she responded that the apex deposition doctrine is not well-established because it has not been mentioned or adopted by the majority of United States Courts of Appeals, including the First Circuit. (Docket No. 76 at 2-4). Ms. González-Berrios affirms that her request to depose Mr. Meléndez would cause no harm, is justified and that to fairly adjudicate her claims, a jury would have to hear "the relevant admissible evidence" that only the Hospital's CEO can provide. (Docket No. 76 at 4-9) However, to protect her attorney's work-product, she is required to make an *in camera* evidentiary proffer to show this. (Docket No. 76 at 8-9). Accordingly, on August 23, 2019, Ms. González-Berrios filed a *Motion Requesting In-Camera Review*. (Docket No 77).

## II.  APPLICABLE LAW

**A. Protective Orders under Fed. R. Civ. P. 26(c):**

Fed. R. Civ. P. 26(c) governs protective orders and provides that a "court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." This Rule "was adopted as a safeguard for the protection of parties and witnesses in view of the almost unlimited right of discovery given by Rule 26(b)(1)." 8A Charles A. Wright, Arthur R. Miller & Richard L. Marcus, Fed. Prac. & Proc. Civ. § 2036 (3d ed. 2019) (citing Miscellaneous Docket Matter No. 1 v. Miscellaneous Docket Matter No. 2, 197 F.3d 922 (8th Cir.

1999)). In order to protect parties and witnesses, Courts are authorized to impose certain terms and conditions on a certain disclosure or discovery, specify what method should be used, or forbid it all together. Fed. R. Civ. P. 26(c)(1)(A)-(H). The party seeking one of these remedies, bears the burden of showing that a protective order is necessary by providing the court with a "particular and specific demonstration of fact" and not merely "stereotyped and conclusory statements." Equal Employment Opportunity Comm'n v. BDO USA, L.L.P., 876 F.3d 690, 698 (5th Cir. 2017) (quoting In re Terra Int'l, 134 F.3d 302, 306 (5th Cir. 1998).

According to the First Circuit, "Rule 26(c) is highly flexible, having been designed to accommodate all relevant interests as they arise." Gill v. Gulfstream Park Racing Ass'n., Inc., 399 F.3d 391, 402 (1st Cir. 2005) (quoting United States v. Microsoft Corp., 165 F.3d 952, 959-60 (D.C. Cir. 1999)). Therefore, the "good cause" standard established by Fed. R. Civ. P. 26(c) "is a flexible one that requires an individualized balancing of the many interests that may be present in a particular case." Id. When conducting this analysis, it is worth noting that even an unreasonable, "slight inconvenience" may warrant restricting discovery, "if there is no occasion for the inquiry and it cannot benefit the party making it". Charles A. Wright et al., *supra*.

**B. The Apex Deposition Doctrine:**

The apex deposition doctrine arose from the potential abuse or harassment that a deposition notice directed at an official at the highest level of corporate governance may entail. *See* Celerity, Inc. v. Ultra Clean Holding, Inc., 2007 WL 205067 at 3 (N.D. Cal. 2007); *see also* Chevron Corp. v. Donziger, 2013 WL 1896932, at *1 (S.D.N.Y. 2013) ("Because of the possibility of business disruption and the potential for harassment, courts give special scrutiny to requests to depose high-ranking corporate and governmental officials."). As a leading Civil Procedure treatise explains:

> Under the "apex doctrine," courts sometimes grant protective orders barring the depositions of high-level corporate officers or managers who are unlikely to have personal knowledge of the facts sought by the deposing party. **If a deponent is a high level corporate officer who certifies that he or she has no personal knowledge of the facts, the court may grant a protective order requiring the deposing party to first seek discovery through less intrusive methods**, e.g. from lower level employees who are more likely to have direct knowledge. 6 Moore's Federal Practice, § 26.105[2][a] at 26-521 (2019) (emphasis added).

In other words, the apex deposition doctrine seeks to prevent the deposition of a high-level executive "that is sought **simply because** [that person is] the CEO or agency head—the top official, **not because of any special knowledge of, or involvement in, the matter in dispute**." Minter v. Wells Fargo Bank, N.A., 258 F.R.D. 118, 126 (D.Md. 2009). (emphasis added).

The apex deposition doctrine has been utilized to evaluate the propriety of deposing high-level corporate officials by U.S. District Courts throughout the nation including the District of Puerto Rico, albeit not always by name. *See* e.g., B. Fernandez & Hnos. V. Intern. Broth. of Teamsters, 285 F.R.D. 185 (D.P.R. 2012); Roman v. Cumberland Ins. Group, 2007 WL 4893479, at *1 (E.D. Pa. 2007) ("Courts throughout the country have prohibited the deposing of corporate executives who have no direct knowledge of a plaintiff's claim when other employees with superior knowledge are available to testify."); Robinson v. Nexion Health At Terrell, Inc., 312 F.R.D. 438, 443 (N.D. Tex. 2014) ("Federal courts permit the depositions of such "apex executives" when conduct and knowledge at the highest levels of the corporation are relevant to the case."); Six West Retail Acquisition, Inc. v. Sony Theatre Mgmt. Corp., 203 F.R.D. 98, 102 (S.D.N.Y. 2001) (finding that it "may be appropriate" to preclude redundant deposition of high rank officials where other officials of a party will also be questioned). Moreover, this Court has found no precedent from the U.S. Supreme Court or the First Circuit *forbidding* the application of the apex deposition doctrine.

Instead, the First Circuit has recognized the apex deposition doctrine in the government context, which likewise requires that prior to deposing high ranking governmental officials, it be shown that they possess first-hand, relevant knowledge that cannot be

obtained from other persons. *See* Bogan v. City of Boston, 489 F.3d 417 (1st Cir. 2007). Furthermore, another judge in this District specifically held that when a "deponent is a high-level corporate officer who certifies that he has no personal knowledge of the facts, the court may grant a protective order requiring the deposing party to first seek discovery through less intrusive methods, e.g., from lower level employees who are more likely to have direct knowledge." B. Fernandez & Hnos., 285 F.R.D. 185, 186 (D.P.R. 2012) (quoting 6-26 Moore's Federal Practice-Civil § 26.105[2][a]).

Certainly, the apex deposition doctrine does not strictly prohibit the deposition of high-level executives when their conduct or knowledge is relevant in a case. *See* Turner v. Novartis Pharmaceuticals, 2010 WL 5055828 (E.D. La. 2010). When determining whether to allow an apex deposition, courts should consider: "(1) whether the deponent has unique first-hand, non-repetitive knowledge of the facts at issue in the case and (2) whether the party seeking the deposition has exhausted other less intrusive discovery methods." Apple Inc. v. Samsung Elecs. Co., Ltd, 282 F.R.D. 259, 263 (N.D. Cal. 2012) (quotations omitted); *see also* Performance Sales & Mktg. LLC v. Lowe's Companies, Inc., 2012 WL 4061680, at *3 (W.D.N.C. 2012); Blue Cross Blue Shield of Minnesota v. Wells Fargo Bank, N.A., 2012 WL 5471113, at *2 (D. Minn. 2012) (holding that the Magistrate Judge reasonably applied the apex

doctrine by requiring plaintiffs to show that an executive "had unique or special knowledge rather than requiring Defendant to meet its heavy burden of demonstrating extraordinary circumstances justifying a protective order"). As an example, with these factors in mind, the District of Rhode Island held that the Chairman of the Board of Chrysler Corporation need not be deposed after reviewing his signed affidavit "professing ignorance to the information the plaintiffs seek." Mulvey v. Chrysler Corp., 106 F.R.D. 364, 366 (D.R.I. 1985).

### III. ANALYSIS

**A. The Hospital Has Met the Requirements of the Apex Deposition Doctrine and Established Good Cause for a Protective Order Barring the Deposition of Mr. Meléndez:**

The Hospital has met the requirements of the apex deposition doctrine by certifying under penalty of perjury that Mr. Meléndez lacks personal knowledge of the facts and establishing good cause for a protective order barring his deposition. Mr. Meléndez's declaration under penalty of perjury asserts that he lacks personal, relevant knowledge and contains sufficient factual material to conclude that taking his deposition would needlessly detract from his managerial responsibilities thereby unduly burdening him and the Hospital.

Specifically, Mr. Meléndez's statement describes how he oversees four (4) hospitals, among other operations, and 3,800 employees. (Docket No 74-1 ¶¶ 1-4). Furthermore, he explains that

although he is ultimately responsible for these entities and individuals, he is not directly involved in their day-to-day operations and thus, relies on a managerial team for their supervision. (Docket No. 74-1 ¶ 5). Moreover, in his declaration under penalty of perjury, Mr. Meléndez expressly denies having personal knowledge relevant to this case by stating that he:

- lack[s] personal knowledge of the specific details, structure or activities of every single entity and departments within the Sistema de Salud Menonita's corporate structure;
- was not active in the day to day affairs regarding the emergency room in the Mennonite General Hospital – Cayey in 2016, nor at present.
- …[has] no knowledge about the protocols, policies and procedures, nor the functioning of the emergency room. (Docket 74-1 at ¶¶ 4 and 7).

Lastly, Mr. Meléndez affirms that "no corporate or contractual issues related to this case have been brought to [his] attention." (Docket No. 74-1 ¶ 9).

All told, Mr. Meléndez's declaration under penalty of perjury shows that the Hospital's position that he lacks personal knowledge is not a bald assertion. Mr. Meléndez's statement shows in detail that he oversees a sprawling enterprise with thousands of employees. This also increases the probability that other employees, that are not the Hospital's CEO, could have relevant testimony regarding medical protocols and the emergency room's function, rendering Mr. Meléndez's deposition unnecessary or redundant. After taking into consideration Mr. Meléndez's

statement affirming his lack of personal and relevant knowledge, the nature of the case (i.e. medical malpractice as opposed to a corporate dispute), and the size of the Mennonite healthcare system, this Court finds that the Hospital adequately met the requirements of the apex deposition doctrine. Furthermore, these facts heighten the possibility that unjustified depositions could be used to harass both Mr. Meléndez and the Hospital.

### B. Ms. González-Berrios has Not Established that Mr. Meléndez Possesses First-Hand, Unique Relevant Information:

Ms. González-Berrios has not established that Mr. Meléndez possesses relevant evidence, and much less that it is first-hand and unique. Fed. R. Civ. P. 26(b)(1) generally limits discovery to matters that are "relevant to any party's claims or defenses and proportional to the needs of the case." Neither Ms. González Berrios' *Amended Complaint*, nor her submissions in opposition to the Hospital's *Motion to Compel*, contain allegations regarding Mr. Meléndez, his position, or his functions to meet this standard. Simply put, Ms. González-Berrios' assertion that Mr. Meléndez possesses "unique relevant admissible evidence" is unsubstantiated by the record.

The gravamen of Ms. González-Berrios' *Amended Complaint* lies in alleged actions and omissions that took place in the Hospital's emergency room and not in its executive suite. (Docket No. 4 ¶¶ 4, 10, 25, 28). Plaintiff explicitly states that "[t]he general tort

claims arise from a myriad of negligent deviations from the applicable standard of medical care in a hospital's emergency room and radiology department settings." (Docket No. 4 ¶ 4). While the *Amended Complaint* alleges that the Hospital had a legal duty to establish certain policies and protocols, it does not contain any allegations alluding to the Hospital's CEO even if under information and belief. (Docket No. 4 ¶¶ 231, 235). Thus, the *Amended Complaint* is devoid of any factual allegations that could lead the Court to believe that Mr. Meléndez possesses **relevant** information that would be **uniquely** within his purview as CEO.

The Court is mindful that "a fact need not be alleged in the Complaint for a party to be entitled to discovery of information concerning that fact" and that "[a] court's determination of whether a discovery request is 'relevant to any party's claim or defense' must look beyond the allegation of a claim or defense to the controlling substantive law." 6 Moore's Federal Practice, § 26.42[1] at 26-155 (2019). But the issue is that the *Amended Complaint* does not make evident that the Hospital's CEO may have first-hand, unique knowledge of facts relevant to Ms. González-Berrios' claims or the Hospital's defenses **and** Plaintiff's submissions to the Court fail to fill in the gaps. (Docket Nos. 76, 77 & 86).

In response to the Hospital's *Motion for Protective Order*, the Court would have expected Ms. González-Berrios to at least

**allude** to prior deposition testimony or some other discovery suggesting that Mr. Meléndez indeed possesses first-hand, relevant information, regardless of whether it is unique or not. Instead, Plaintiff chose to rely on a conclusory assertion of attorney work-product and requested an in-camera inspection. (Docket No. 77). The Court will not conduct an in-camera inspection under these circumstances. *See* Kellogg USA, Inc. v. B. Fernandez Hermanos, Inc., 269 F.R.D. 95, 99 (D.P.R. 2009) (quotation omitted) ("A court's in camera inspection of disputed documents 'is not to be used as a substitute for a party's obligation to justify its withholding of documents.'").

In light of Ms. González-Berrios' failure to establish that Mr. Meléndez's knowledge is relevant, alternate authority for the order barring the taking of his deposition for the time being is provided by the Federal Rules of Civil Procedure. Fed. R. Civ. P. 26(b)(2)(C) **commands** the Court to:

> [L]imit the frequency or extent of discovery otherwise allowed by these rules or by local rules if it determines that...the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive... or the proposed discovery is outside the scope permitted by Rule 26(b)(1).

District Courts possess broad discretion under Fed. R. Civ. P. 26 to "tailor discovery narrowly and to dictate the sequence of discovery." Crawford-El v. Britton, 523 U.S. 574, 598 (1998) (holding that trial judges should give priority to discovery

regarding qualified immunity defense asserted by government officials).

### C. A Deposition Under Fed. R. Civ. P. 30(B)(6) May Address the Parties' and the Court's Concerns:

As with all litigants, the Court understands Ms. González-Berrios' concerns about conserving her resources and expediting the resolution of this case. *See* Fed. R. Civ. P. 1. Moreover, the Court is of the view that Plaintiff need not engage in a wild goose chase before she can depose Mr. Meléndez. But the Court also understands the Hospital's interest in avoiding a potentially needless deposition of its CEO. Allowing the deposition of a CEO when it has not been shown that he possesses first-hand or unique relevant knowledge that cannot be obtained through other means, could set a pernicious example for other cases before this Court.

As suggested by the Hospital, Fed. R. Civ. P. 30(b)(6) affords a way to allay these concerns while allowing Plaintiff the opportunity to develop relevant evidence including that which might justify Mr. Meléndez's deposition in due course. Under Fed. R. Civ. P. 30(b)(6), a party may name as a deponent in its notice "a public or private corporation, a partnership, an association, a governmental agency, or other entity." The notice "must describe with reasonable particularity the matters for examination." Fed. R. Civ. P. 30(b)(6). The organization must then "designate one or more officers, directors, or managing agents, or designate other

persons who consent to testify on its behalf." Fed. R. Civ. P. 30(b)(6); *see* Estate of Rosado-Rosario v. Falken Tire Corp., 319 F.R.D. 71, 74 (D.P.R. 2016) ("The organization must designate multiple deponents if more than one is necessary to respond to all designated topics."). Afterwards, the organization may "set out the matter on which each person designated will testify." Id. The organization then has the duty of producing for deposition a witness (or such witnesses as may be necessary) to testify as to organization's knowledge on the topics designated in the notice. Id.

While under Fed. R. Civ. P. 30(b)(6) deposition representatives need not have personal knowledge of the matters as to which they will testify, they must be duly prepared to testify as to matters in the notice with the "information known or reasonably available to the organization" and their answers are binding on the organization. *See* Mitsui & Co. (U.S.A), Inc. v. Puerto Rico Water Resources Authority, Inc., 93 F.R.D. 62, 67 (D.P.R. 1981). Moreover, "it is settled law that a party need not produce the organizational representative with the greatest knowledge about a subject; instead, it need only produce a person with knowledge whose testimony will be binding on the party." Rodríguez v. Pataki, 293 F.Supp.2d 305, 311 (S.D.N.Y. 2003) (citing Gucci Am., Inc. v. Exclusive Imports Int'l, 2002 WL 1870293, at *8-*9 (S.D.N.Y. 2002); Cruz v. Coach Stores, Inc.,

1998 WL 812045, at *6 (S.D.N.Y. 1998), *aff'd in part, vacated in part on other grounds,* 202 F.3d 560, 573 (2d Cir. 2000)).

Ms. González-Berrios can make use of Fed. R. Civ. P. 30(b)(6) to seek discovery on the topics she wished to cover with Mr. Meléndez and as an opportunity to develop evidence which might show the propriety of deposing the Hospital's CEO.

## IV. CONCLUSION

"**Virtually every court that has addressed deposition notices directed at an official at the highest level or "apex" of corporate management has observed that such discovery creates a tremendous potential for abuse or harassment.**" *See* Celerity, Inc., 2007 WL 205067, at *3 (emphasis added) (citing Mulvey v. Chrysler Corp., 106 F.3d. 364, 366 (D.R.I. 1985)). Allowing the deposition of the Hospital's CEO when it has not been shown that he possesses first-hand, unique relevant knowledge and without exhausting other discovery methods, would potentially open the door to the taking of his deposition in every single case against the Hospital, significantly disrupting his managerial responsibilities.

Thus, based on the record before the Court, a protective order precluding Ms. González-Berrios from deposing the Hospital's CEO, Mr. Meléndez Rosario, is justified under Fed. R. Civ. P. 26(c). *See* e.g. Apple, 282 F.R.D. at 259 (granting protective order under Rule 26(c) and the apex deposition doctrine barring the deposition of the President of Samsung's Mobile Division because the court

was not persuaded that Apple had not proved he had unique first-hand knowledge); Celorio v. Google, Inc., 2012 WL 1281605 (N.D. Florida 2012)(granting protective order barring the deposition of Google's CEO and co-founders).

The protective order issued herein is not cast in stone. Mr. Meléndez should **not** be immune to deposition if it turns out that in fact he has first-hand, unique relevant knowledge to the case at bar. *See* e.g. Apple v. Samsung Electronics, Inc., *supra.* (allowing deposition of Samsung Vice-President of Advanced R & D in patent dispute because he was directly involved in reviewing certain Samsung features in relation to Apple and sought detailed feedback from designers); Affinity Labs of Texas v. Apple, Inc., 2011 WL 1753982 at 15 (N.D. Cal. 2011) ("[W]hen a witness has personal knowledge of facts relevant to the lawsuit, even a corporate president or CEO is subject to the deposition.").

The Court **GRANTS** the *Hospital's Motion for Protective Order Under Rule 26(C) Of the F.R.C.P.* and **DENIES** Ms. González-Berrios' *Motion Requesting In-Camera Review*. A protective order is hereby issued precluding Ms. González-Berrios from deposing the Hospital's Chief Executive Mr. Pedro L. Meléndez Rosario.

Plaintiff is granted until **October 15, 2019** to take a Fed. R. Civ. P. 30(b)(6) of Mennonite General Hospital, Inc. Plaintiff may file for relief from this protective order within **fourteen (14) days** after taking the Fed. R. Civ. P. 30(b)(6) deposition. The

Hospital shall respond to any such submission within **seven (7) days** of its filing.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico this 30th day of September 2019.

S/ RAÚL M. ARIAS-MARXUACH
United States District Judge
