**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| ANGÉLICA M. GONZÁLEZ BERRIOS, **Plaintiff,** v. MENNONITE GENERAL HOSPITAL, INC., et al., **Defendants** ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯ MENNONITE GENERAL HOSPITAL, INC., et. al. **Third Party Plaintiffs** **v.** TRIPLE S PROPIEDAD, INC. **Third Party Defendant** | **CIVIL NO.** 18-1146 (RAM) |

## OPINION AND ORDER

RAÚL M. ARIAS-MARXUACH, District Judge

### I. BACKGROUND

Pending before the Court are Plaintiff Angélica González-Berrios' *Motion in Limine to Include and Exclude Evidence at Trial* and *Supplemental In Limine Request* (Docket Nos. 122 and 124). Specifically, Plaintiff requests that the Court **admit** three (3) YouTube videos prepared and posted by codefendant Mennonite General Hospital ("MGH" or "the Hospital") as well as videos of deposition testimony proffered by five (5) witnesses, all of whom

are MGH employees or physicians with privileges at the Hospital. (Docket No. 122). On the other hand, Plaintiff moves to exclude (1) all documentary and testimonial evidence regarding the limits of the insurance policies available to them and (2) any evidence or mention of the Hospital's non-for-profit corporate status. (Docket Nos. 122 and 124).

In response, codefendants MGH and Medical Protective ("MedPro"), collectively "Defendants," filed a joint *Opposition to Motion In Limine to Include and Exclude evidence in Trial (Docket #123) and the Supplemental In Limine Request (Docket #124)*. (Docket 128). Likewise, third-party defendant Triple-S Propiedad, Inc. ("Triple-S") filed its own *Opposition to Plaintiffs' In Limine Motions*. (Docket No. 129).

For the reasons discussed below, the Court **DENIES** in part and **GRANTS** in part Plaintiff's *Motion in Limine to Include and Exclude Evidence at Trial* and *Supplemental In Limine Request* at Docket No. 122 and **DENIES** Plaintiff's *Supplemental In Limine Request* at Docket No. 124.

## II. LEGAL STANDARD

*A. The Admissibility of Relevant Evidence*

Fed. R. Evid. 401 establishes that, "evidence must be relevant to be admissible." In re Fin. Oversight & Mgmt. Bd. for Puerto Rico, 2019 WL 3565942, at *2 (D.P.R. 2019) (internal quotation omitted). Likewise, "irrelevant evidence is not

admissible." Fed. R. Evid. 402. Pursuant to Fed. R. Evid. 401, evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence" and if the fact in question "is of consequence in determining the action." Thus, for evidence to be relevant it "need only move the inquiry forward to some degree" on a fact of consequence. _Bielunas v. F/V Misty Dawn, Inc._, 621 F.3d 72, 76 (1st Cir. 2010) (citation omitted). Said test constitutes "a very low bar for relevance." _United States v. Pereira_, 312 F. Supp. 3d 262, 272 (D.P.R. 2018) (quotation omitted). Therefore, evidence "which may prove or disprove a party's liability theory" is necessarily relevant. _E.E.O.C. v. Ventura Corp._, 2013 WL 550550, at *5 (D.P.R. 2013) (quoting _Velez_, 590 F. Supp. 2d at 258); _see also_, _Vazquez-Corales v. Sea-Land Serv., Inc._, 172 F.R.D. 10, 12 (D.P.R. 1997) ("It is plainly obvious that evidence with the potential to disprove a plaintiff's theory or to reveal a contributing cause of the damages for which the defendant is not responsible is relevant to the case.")

   _B. When Should Relevant Evidence Be Excluded_

   The Federal Rules of Evidence codify various instances in which relevant evidence should be excluded. Fed. R. Evid. 402 dictates that "[r]elevant evidence is admissible unless any of the following provides otherwise: the United States Constitution; a

federal statute; [the Federal Rules of Evidence]; or other rules prescribed by the Supreme Court [of the United States]."

On the other hand, Fed. R. Evid. 403 requires exclusion of evidence "if its probative value is substantially outweighed by a danger of […] unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." The First Circuit has emphasized that this rule protects "against **unfair** prejudice, not against all prejudice." United States v. Whitney, 524 F.3d 134, 141 (1st Cir. 2008) (emphasis added).

Another judge in this District has noted that "[e]vidence is generally deemed unfairly prejudicial if it has an undue tendency to prompt a decision by the factfinder on an improper basis." Diaz-Casillas v. Doctors' Ctr. Hosp. San Juan, 342 F. Supp. 3d 218, 232 (D.P.R. 2018) (quoting United States v. Benedetti, 433 F.3d 111, 118 (1st Cir. 2005)). Thus, when the line between the probative value and unfair prejudice of certain evidence is close, "Rule 403 tilts the balance in favor of admission." United States v. Villa-Guillen, 2019 WL 3318411, at *4 (D.P.R. 2019).

### C. Evidence required in medical malpractice cases

In medical malpractice cases under Puerto Rico law, plaintiffs must establish three main elements: "(1) the duty owed (i.e., the minimum standard of professional knowledge and skill required in the relevant circumstances); (2) an act or omission

transgressing that duty; and (3) a sufficient causal nexus between the breach and the harm." Laureano Quinones v. Nadal Carrion, 2018 WL 4057264, at *2- 3 (D.P.R. 2018) (quoting Marcano Rivera v. Turabo Medical Ctr. P'ship, 415 F.3d 162, 167 (1st Cir. 2005)). In these cases, the duty owned by physicians is to comply with the national standard of care, "that, in the light of the modern means of communication and education, meets the requirements generally recognized by the medical profession." Ramirez-Ortiz v. Corporacion Del Centro Cardiovascular de Puerto Rico y Del Caribe, 32 F. Supp. 3d 83, 87 (D.P.R. 2014) (quoting Santiago-Otero v. Mendez, 135 D.P.R. 540, 1994 P.R.-Eng. 909, 224 (1994)). The applicable standard of care can be established by referencing "a published standard, [discussion] of the described course of treatment with practitioners outside the District ... at seminars or conventions, or through presentation of relevant data." Strickland v. Pinder, 899 A.2d 770, 773-74 (D.C. 2006) (internal citations omitted).

### III. DISCUSSION

*A. The Admissibility of MGH's YouTube Videos*

Plaintiff seeks to admit into evidence three (3) YouTube videos created by MGH, namely the "Emergency Room Video," the "Living the Mennonite Experience Video," and "Zero Error Policy Video". (Docket No. 122 at 2-12). These videos explain in broad terms the nature of the services that the Hospital should strive

to provide to its patients, specifically services with the highest standards of quality and safety, zero mistakes, and the shortest wait time possible. Id. Plaintiff posits that these three videos make it more probable that the hospital and its staff were negligent because the treatment Plaintiff received does not meet the benchmarks established in the videos. Id.

In its opposition, Defendants argue that the videos are irrelevant, lack probative value and are insufficient to prove the alleged negligent actions or omissions that must be proven through medical experts. (Docket No. 128 at 5).

The videos in controversy include general, aspirational statements that do not constitute detailed internal regulations nor do they articulate a specific standard of care physicians must meet under Puerto Rico law. Even the "zero error policy" goes against the general tort law principles that (a) doctors do not need to meet a "standard of perfection" and (b) "even an acknowledged error in medical judgment cannot support a malpractice claim so long as the mistake is reasonable." Rolon-Alvarado v. Municipality of San Juan, 1 F.3d 74, 78 (1st Cir. 1993). Moreover, Plaintiff does not allege in their pleadings that they relied on these videos when choosing to seek treatment at MGH. See Ferus ex rel. Estate of Ricciardi v. United States, at *2 (N.D. Ill. 2006) (finding that a hospital's advertising materials were irrelevant, and therefore did not need to be produced during

discovery in part because "without some form of alleged reliance, the court does not see how advertising could raise the standard of care").

The fact that the hospital states publicly that it provides a high-quality service, does not make any fact of consequence in this case more or less probable nor does it help prove or disprove Plaintiff's liability theory. *See* Fed. R. Evid. 402; <u>Ventura Corp.</u>, 2013 WL 550550, at *5. *Cf.* <u>Intermountain Stroke Ctr., Inc. v. Intermountain Health Care, Inc.</u>, No. 2014 WL 1320281, at *6 (D. Utah 2014), <u>aff'd,</u> 638 F. App'x 778 (10th Cir. 2016) (holding that a Hospital's "claim to have the best or highest quality product or service is paradigmatic puffery," defined as a "vague generality no reasonable person would rely on as assertion of particular facts," for purposes of the Lanham Act). The videos in question are irrelevant and thus inadmissible. Therefore, the Court **denies** Plaintiff's request at Docket No. 122 to admit the Hospital's YouTube videos.

*B. The Admissibility of Deposition Videos*

Plaintiff contends that videos of given deposition testimony by the Administrative Director of the Hospital's emergency room, two of the Hospital's nurses and two of its physicians consist of opposing party statements and thus should be admitted as substantive evidence under Fed. R. Evid. 801(d)(2)(d). (Docket No. 122 at 13). On their part, Defendants argue that these individuals

are not corporate officers, directors, managing agents, or representatives designated under Rule 30(b)(6) and therefore, they are non-party witnesses whose deposition testimony can only be admissible under the circumstances listed at Fed. R. Civ. P. 32(a)(4), which allegedly are not met. (Docket No. 128 at 6-7).

Fed. R. Evid. 801(d)(2)(D) establishes that a statement is not hearsay if it is "offered against an opposition party and […] was made by the party's **agent or employee** on a matter within the scope of that relationship and while it existed." Therefore, the witnesses need not be MGH's designated representatives under Fed. R. Civ. P. 30(b)(6). While the Hospital concedes that the Administrative Director and nurses are its employees, it contends that the physician witnesses have privileges at the Hospital but are not employees. (Docket No. 128 at 6). Physicians with privileges *have* been considered hospital employees for purposes of EMTALA's whistleblower provision. *See* Muzaffar v. Aurora Health Care S. Lakes, Inc., 985 F. Supp. 2d 875, 880 (E.D. Wis. 2013).

Regardless of whether the witness is a party, the Rules of Civil Procedure and Evidence are "based on the premise that live testimony is more desirable than a deposition." § 2146 Deposition of a Nonparty Witness, 8A Charles A. Wright and Arthur R. Miller, Fed. Prac. & Proc. Civ. § 2146 (3d ed. 2019). Thus, even though Fed. R. Civ. P. 32(a)(3) states that a party's deposition may be used for any purpose, "nothing in the statute indicates that they

may be used at any time or in any manner as a party sees fit."
Gonzalez Prod. Sys., Inc. v. Martinrea Int'l Inc., 310 F.R.D. 341,
344 (E.D. Mich. 2015). Moreover, to permit doing so "would
undermine the general 'preference for live testimony' and the
'importance of cross-examination' as well as the Court's ability
to efficiently run a trial. Id. (quoting White v. Illinois, 502
U.S. 346, 356, (1992)). Likewise, "[i]f a nonparty witness is
available to testify, the deposition cannot be used in lieu of
live testimony (although it is available to impeach)." Id.
Likewise, 8A Charles A. Wright and Arthur R. Miller, Fed. Prac. &
Proc. Civ. § 2146 (3d ed. 2019). In the present case, presenting
the deposition videos *instead* of live testimony is unwarranted if
the witnesses are available and presenting the videos in *addition*
to live testimony would cause undue delay and be needlessly
cumulative. *See* Fed. R. Evid. 403.

Thus, Plaintiff's request to include the deposition testimony
as substantive evidence at Docket No. 122 is **denied** at this time.
The deposition videos may be used for impeachment purposes or to
refresh a witness's recollection pursuant to Fed. R. Civ. P. 32(2)
and if the videos are of deposition testimony that is admissible
under Fed. R. Evid. 801(d)(2)(D), the Court will not issue a
limiting instruction.

*C. The Admissibility of Insurance Policy Limits*

Plaintiff contends that the Court should preclude any mention or evidence as to the limits of the insurance policies available to Defendants, given that there are no controversies regarding said limits. (Docket No. 122 at 37). In their *Opposition*, Defendants state, without providing any case law, that MedPro has the right to notify the limits of the insurance policy. (Docket No. 128 at 9). Third-party defendant Triple-S also contends that not informing the jury could lead them to assume that the insurance companies are bottomless sources of compensation. (Docket No. 129 at 5).

The limits of an insurance policy "are not probative of the issue of damages, absent a controversy over the amount of coverage itself." Wallace v. Allstate Ins. Co., 2010 WL 200001, at *5 (S.D. Miss. 2010). In addition to being of little, if any, probative value, evidence of policy limits can be "unduly prejudicial, misleading, and confusing to a jury, and is of little to no probative value to the claims in this case." Id. (citing Fed. R. Evid. 403). Accordingly, this District has required that policy limits be redacted from insurance policy documents in order to be introduced at trial. Taboas v. Fiddler, Gonzalez & Rodriguez, PSC, 41 F. Supp. 3d 137, 144 (D.P.R. 2014). In light of the unduly prejudicial nature of insurance policy limits the Court **grants**

Plaintiff's request at Docket No. 122 to preclude any mention of said limits.

### D. The Admissibility of the MGH's non-profit status

Plaintiff seeks to exclude any evidence or mention at trial of the Hospital's non-profit corporate status (Docket No. 124 at 1). Plaintiff argues that not only is this information irrelevant to the adjudication of the case, but it could also unfairly prejudice or influence the jury in violation of Fed. R. Evid. 403. Id. The Hospital counters that that its non-profit status holds no bearing on the jury's determination and alleges that there is no evidence to the contrary. (Docket No. 128 at 9).

Both parties correctly articulate that the Hospitals non-profit status is patently irrelevant to the case at bar, as it does not prove or disprove Plaintiff's theory of liability. See E.E.O.C. v. Ventura Corp., 2013 WL 550550, at *5 (D.P.R. 2013. However, "basic identifying information about any person or entity which is a party to the litigation is routinely admitted in evidence even though it has little or no relevance to the issues in dispute" Armstrong v. United States, 2004 WL 2595931, at *4 (D. Alaska Feb. 20, 2004). Therefore, although MGH's non-profit status "has no bearing on the standard of care owed […] [t]he trier of fact is [still] entitled to know enough about the parties to understand who or what they are." Id. See also City of Farmington Hills Employees Ret. Sys. v. Wells Fargo Bank, N.A., 2014 WL

12610207, at *6 (D. Minn. Apr. 3, 2014) ("To the extent that testimony regarding Plaintiffs' charitable and nonprofit status is descriptive of any Plaintiff entity, such evidence shall be presumptively admissible, subject to any trial objections the defense may have.").

Thus, Plaintiff's *Supplemental In Limine Request* at Docket No. 124 is **denied** in part and **granted** in part. MGH's non-profit status will only be mentioned when identifying the party for *voir dire*. Furthermore, admissible documents that reference MGH's non-profit status do not need to be redacted, unless the Court finds that the references are excessive. A "limited presentation" of MGH's status "cannot unfairly prejudice" Plaintiff. Id. However, no party will be permitted to present additional evidence regarding the Hospital's non-profit status nor shall they be allowed to argue to the jury that said status has a bearing on any issue regarding liability or damages.

## IV. CONCLUSION

In light of the above, Plaintiff's *Motion in Limine to Include and Exclude Evidence at Trial* at Docket No. 122 is **DENIED** in part and **GRANTED** in part. Specifically, Plaintiff's request to admit the Hospital's YouTube Videos and the deposition videos is **DENIED**, while Plaintiff's request to exclude evidence of insurance policy limits is **GRANTED**. Plaintiff's *Supplemental In Limine Request* at Docket No. 124 is **DENIED**.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico this 30th day of January 2020.

S/ RAÚL M. ARIAS-MARXUACH
United States District Judge