**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

Angelica González Berrios,

     **Third-Party Plaintiff,**

          v.,

Triple-S Propiedad,

     **Third-Party Defendant.**

Civil No. **18cv01146 (RAM)**

**TRIPLE-S's REPLY TO THIRD-PARTY PLAINTIFF ANGELICA GONZALEZ
BERRIOS "MOTION IN COMPLIANCE WITH ORDER TO SHOW CAUSE."**

***To The Honorable Rául M. Arias-Marxuach, US District Judge:***

    **COMES NOW** third-party defendant Triple-S Propiedad, Inc.
("Triple-S"), thru its undersigned attorneys and respectfully
states and prays as follows:

### I.   Introduction

    That on March 11, 2019, this Court entered an order at Docket
No. 187, requesting from third-party plaintiff Angelica Gonzalez
Berrios ("Gonzalez"), to show cause as to why this case should not
be dismissed due to lack of subject matter jurisdiction. Gonzalez
filed her motion in compliance on April 10, 2020 at Docket No.
209.

    Unfortunately, instead of concentrating herself on addressing
the substantive issue at hand, she also took the opportunity, thru
her counsel of record, to delve into what has become a troubling
pattern of spewing unfounded attacks, misinformation and innuendos

upon Triple-S and the undersigned attorney.  And even more unfortunate, both Triple-S and the undersigned must take this Court´s precious time, in order to briefly address said pattern before discussing the substantive legal issues at hand.

First, González states in footnote # 1 of page two (2) that the undersigned "reiterated for the record remarks that final decision making for Angelica's claims comes from a corporate official stationed in Germany, thousand of miles away from our shores," in order to incorrectly aver that Triple-S's worldwide reach is "beyond peradventure." This footnote is linked to Gonzalez's continuing protestation that Triple-S is an arm of "one of the biggest corporate conglomerates in the Caribbean and Latin America," which is an irrelevant statement she is prone on repeating when she files an opposition to a Triple S motion.[1]

The only problem with González's footnote is that the comment made by the undersigned during side bar conferences was that Triple-S's officials that had to sign off on the seven hundred and fifty thousand dollars ($750,000.00) offer - which was accepted by her during the second day of the scheduled trial - were in Germany, nothing more and nothing less.  At no time, did the undersigned mention that Triple-S had offices in Germany, or any other part of Europe, or Asia, or Central or South America, or even in the United

---

[1] For example, paragraphs one (1) and ten (10) of her opposition at Docket No. 109, to Triple-S's motion requesting leave to file a fourth-party complaint.

States of America.  Triple-S's executives were located in Germany
during the time of trial because they were negotiating the
reinsurance contracts that all insurance companies abide
themselves of as part of their business.  More than one of those
re-insurance companies have their offices in Germany, e.g.  Munich
Re, Cologne Re, etc., thus Triple-S's executives have to fly over
there in order to negotiate said contracts.

During settlement negotiations, Triple-S officials in Puerto
Rico had to contact the executives that were in Germany negotiating
the reinsurance contract to get their approval for the amount of
three quarters of a million dollars that Gonzalez was offered and
finally accepted, albeit afterward refusing to honor said
acceptance as represented to Triple-S and this Court during the
second day of trial.

After trying to mislead this Court in that regard, Gonzalez,
then, without a shred of evidence, accuses Triple-S and "those
litigating on its behalf" of engaging in a strategy to litigate
"indefinitely into the future" and that said course of action has
been Triple-S's "strategy since the start of this litigation."
See, p. 2.

 Triple-S filed on October 23, 2019 at Docket No. 102, its
answer to an amended third-party complaint that had been filed on
August 9, 2019 at Docket No. 70 by Menonnite General Hospital.
After said filing, the only other substantive filing that Triple-

S generated was on November 1, 2019 at Docket No. 106,  when it requested leave to file a fourth-party complaint, which was denied pursuant to an order entered on December 11, 2019 at Docket No. 114.  Triple fails to grasp how answering an amended third-party complaint and requesting leave to file a fourth-amended complaint (which did not include a petition to postpone the February 4, 2020 trial date) can be interpreted as a "win-win" strategy that embarks on "not open[ing] its coffers today."

Perhaps self-conscious remorse produced by backing out of an accepted settlement offer for $750,000.00, leads Gonzalez into trying to gaslight Triple-S and its counsel for her own guilt of making a representation to this Court that this case had been settled for said amount and that it would entail including her 20-year old minor son - who was not a party to this case nor to the hodgepodge of cases she and her family filed at the Puerto Rico Court of First Instance, Caguas Superior Court –  as requested by Triple-S, who made it abundantly clear that the amount that had been offered had to finalize forever the litigation related to the events narrated in the complaint at bar, including the state court cases and the issue with Gonzalez's son.  Trusting upon Gonzalez's and her counsel's representations, Triple-S settled the case.

As the record of the case shows, it was Gonzalez's inability to execute the agreed upon settlement that has caused the need to litigate this case into the future.

Not satisfied with her gaslighting attempt, Gonzales shifts gears by trying to mislead this Court by averring on the second paragraph of page seven (7), that Triple-S did not exchange Rule 26 disclosures, which is simply not true. Triple-S notified its disclosures to all attorneys of record, including Gonzalez's, via electronic mail on December 12, 2019.  Copy of said email is attached as Exhibit 1.

Thereafter, Gonzalez protests that Triple-S did not serve written interrogatories, request documents, or serve request for admissions.  This statement borders on the irrational.  First, Triple-S did not have to serve any kind of discovery to Gonzalez because it was only liable to the hospital, who had filed the third-party complaint and was the third-party plaintiff until it assigned said litigious credit to Gonzalez as part and parcel of the settlement they executed.

In turn, the hospital had conducted thorough discovery from Gonzalez, that included serving written interrogatories, requesting documents (including all plaintiff's expert witness reports), and taking various depositions, including Gonzalez's. The hospital notified copy of said documents, depositions transcript, expert repots, etc. to Triple-S.  There was no need to repeat discovery already undertaken by the hospital, which certainly could have construed as annoying or oppressing a party that had already furnished all pertinent and relevant discovery

information to a defendant, who as a third-party plaintiff had made it available to Triple-S.

Moreover, the hospital made available to Triple-S the neurologist expert witness it had hired, Dr. José R. Carlo, thus proceeding to also utilize his services as an expert on damages and including him as Triple-S´s expert on the Joint Proposed Pretrial Order, filed at Docket No. 125. Again, Triple-S fails to grasp how not hiring any other expert, besides making the parties incur in additional expenses related to said endeavor, can constitute a strategy to "litigate into the future."

Then comes a doozy. Gonzalez protests that Triple S´s counsel did not ask questions during attended depositions in Puerto Rico and one attended via telephone conference, which was taken thru video conference by the hospital´s able attorney, sister counsel Nuyen Marrero Bonilla; Gonzalez´s counsel flew to Idaho, USA, to be physically present, which was his prerogative. The undersigned did not have any questions to lodge during the Puerto Rico depositions because all, and Triple-S means all, questions that covered the subject of the depositions were lodged by Gonzalez's attorney or Ms. Bonilla. Regarding the Idaho deposition, Ms. Marrero Bonilla lead the interrogatory, which covered all bases that Triple's counsel had previously discussed with her. Thus, no need to oppress, harass, or annoy with repetitive questions.

As the Court may surmise, neither Triple-S nor its counsel conduct themselves in a manner similar as the one that required from the judge that had previously presided over this case, to admonish Gonzalez's counsel "to conduct himself in a professional manner throughout the remainder of the deposition and not to unreasonably annoy, oppress or embarrass the witness." <u>See</u>, last paragraph of the order issued at Docket No. 53.

Since Triple-S and its counsel do not engage in annoyance, oppression, or embarrassment of this party, or any other, a decision was undertaken not to redux previously undertaken discovery, and to participate professionally in all depositions by not lodging spurious objections or lodging repetitive questions.

In regard to the sections of the Gonzalez's motion that contains her account in regard to what happened during the days before trial, during the dates of the scheduled trial, and afterward, suffice to say that it sounds more like gossip than a legal argument.  This Court is the best witness of what transpired during said dates.

To put to rest this non-issue, enough said by stating that the scheduled trial and jury selection were not conducted because once Gonzalez settled the case with the hospital, this Court had nothing to try since the hospital had not yet properly assigned the third-party complaint to Gonzalez.  Thus, there was no controversy to adjudge until Gonzalez was substituted as a third-

party plaintiff, which did not happen until March 11, 2020 pursuant to an order issued at Docket No. 185.

Finally, Triple-S and its counsel take umbrage to Gonzalez's and her counsel's assertion at page twenty-six that "[b]etter to have money in its coffers than in someone else pockets.  And for Triple-S's litigation counsel, there is no denial that continued litigation means additional billing.  A win-win without doubt."

Said unwarranted attack upon the professional reputation of the undersigned shows an utter lack of respect and civility for a fellow counselor, who at the end of the day is an officer of this Honorable Court trying to do his job to the best of his ability, as imperfect as it may be.  During the thirty-five (35) years of having the privilege to litigate in this forum, the undersigned has never encountered such unbecoming conduct from an officer of this Court.  Apparently, Gonzalez's counsel has not heeded the advised contained in the admonishment issued by this Court at Docket No. 53.

## II.  **The Court Should Decline Exercising Supplemental Jurisdiction**

### A.  **The statute**

It has been recognized that supplemental jurisdiction is a doctrine of subject matter jurisdiction. 13D Charles Alan Wright, Arthur R. Miller, Edward H. Cooper and Richard D. Freer, *Federal Practice and Procedure, pp. 333-334, § 3567* (3ed. 2008).

Congress enacted the supplemental jurisdiction statute on December 1, 1990, under 28 U.S.C.A. § 1367.

In pertinent part it provides:

(a) Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.

…

(c) The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if

(1) the claim raises a novel or complex issue of State law,

(2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,

(3) the district court has dismissed all claims over which it has original jurisdiction, or

(4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

…

B. **§ 1367 (a)**

In regard to § 1367(a), the courts have generally indicated that it pretended to codify the test enunciated in the *Gibbs* case. *United Mine Workers of America v. Gibbs, 383 U.S. 715, 86 S. Ct. 1130, 16 L. Ed. 2d 218 (1966).*[2] ( *"Test established by the Supreme*

---

[2] United Mine Workers of America v. Gibbs, 383 U.S. 715, 86 S. Ct. 1130, 16 L. Ed. 2d 218 (1966).

*Court in* Gibbs and codified by Congress in 1367(a)"), *Voda v. Cordis Corp., 476 F.3d 887, 895 (Fed. Cir. 2007); ("We have consistently read § 1367(a) as codifying, (or in the area of pendant parties, expanding) the jurisdictional standard established in Gibbs. New Rock Asset Partners, L.P. v. Preferred Entity Advancements, Inc., 101 F.3d 1492, 1509, 65 USLW 2402, 1996 WL 708610 (3d Cir. 1996), citing Borough of West Mifflin v. Lancaster, 45 F.3d 780, 788 (3d Cir.1995); Sinclair v. Soniform, Inc., 935 F.2d 599, 603 (3d Cir.1991); Lyon v. Whisman, 45 F.3d 758, 760 (3d Cir.1995).*

The *Gibbs* case prescribes a common-sense, fact-based, pragmatic test by holding that supplemental jurisdiction exists when the relationship between what is known as the jurisdictional-invoking claim, i.e. Gonzalez's EMTALA cause of action filed against the hospital, and the supplemental claim contained in the third-party complaint which the hospital assigned to her, "permits the conclusion that the entire action before the court comprises but one constitutional 'case.'*** The state and federal claims must derive from a common nucleus of operative fact. But if, considered without regard to their federal or state character, a plaintiff's claims are such that he would ordinarily be expected to try them all in one judicial proceeding, then, assuming substantiality of the federal issues, there is *power* in federal

courts to hear the whole." 13D Fed. Prac. & Proc. *p. 337, § 3567.1*
(3ed. 2008) (italic in the original).

Two factors arise from said test as pertinent for supplemental
jurisdiction: First, the jurisdictional-invoking claim and the
supplemental claim must share a common nucleus of operative fact
Second, there must be an expectation that both cases would be tried
in the same proceedings.

The only factor that applies from said test to the present
case is the first one since the EMTALA cause of action contained
in Gonzalez's first amended complaint and the medical malpractice
cause of action contained in the third-party complaint filed by
the hospital, share a common nucleus of operative facts.

But the second factor is not met because Gonzalez's did not
have an expectation that both causes of actions were to be tried
in the same proceeding. Upon the hospital filing the third-amended
complaint against Triple-S, Gonzalez, did not assert a claim
against Triple-S as provided in pertinent part of Fed. R. Civ. 14
(a)(3), which allowed her as a plaintiff to "assert against the
third-party defendant any claim arising out of the transaction or
occurrence that is the subject matter of the plaintiff's claim
against the third-party plaintiff."

Gonzalez's first amended complaint filed against the hospital included a medical malpractice cause of action against the latter.[3]

By failing to assert a claim against third-party defendant Triple-S that arose from the medical malpractice occurrence that was one of the subject matter of her claim against the hospital, no expectation was created that both cases, the EMTALA case and the medical malpractice case would be heard in the same proceeding, because her expectation in that regard, from the supplemental jurisdiction perspective, came to fruition for the first time on March 11, 2020 upon this Court entering an order at Docket No. 185 substituting her for the hospital pursuant to the assignment of the third-party complaint.  That same day, the Court entered partial judgment at Docket No. 186 dismissing with prejudice the EMTALA jurisdiction invoking claim against the hospital pursuant to a joint motion requesting voluntary dismissal with prejudice filed by Gonzalez and the hospital on February 27, 2020 at Docket No. 177.

In other words, if Gonzalez had asserted a claim against Triple-S when the hospital joined it as a third-party defendant, she would have created an expectation that both the EMTALA cause of action and the medical malpractice cause of action embedded in the third-party complaint would have been heard in the same

---

[3] See, Docket No. 4, p. 22, ¶ 190.

proceedings.   Said  expectation  could  have  been  implemented pursuant  to  a  request  to  exercise  supplemental  jurisdiction  over that medical malpractice underlying cause of action when she moved this Court to enter partial judgment dismissing the EMTALA invoking jurisdiction cause of action.

It is not until March 11, 2020, same day that partial judgment was entered, that she is substituted for the hospital, hence it is not until that date that for the first time she could allege that she had an expectation that the medical malpractice cause of action filed against Triple-S would have been heard in the same proceeding where the EMTALA jurisdiction cause of action was being tried.

As  corollary  of  the  aforementioned,  Triple-S  respectfully posits that the second factor of the *Gibbs* test is not satisfied.

But even if this Court finds that both factors are satisfied for purposes of § 1367(a), it does not automatically follow that this Court must exercise supplemental jurisdiction because it may decline it for discretionary reasons pursuant to § 1367(c).

**C. § 1367 (c)**

Supplemental jurisdiction "is a doctrine of discretion, not of plaintiff's right.  Its justification lies in considerations of judicial economy, convenience and fairness to litigants; if these are not present  a  federal  court  should  hesitate  to  exercise jurisdiction over state claims, even though bound to apply state law to them*." Gibbs, 383 U.S. at 726.*  From said statement the

Court crafted the following scenarios that may allow a court to decline jurisdiction: (i) If the jurisdiction-invoking federal claim is dismissed before trial, the state claims should be dismissed as well, (ii) If the state issue substantially predominates, whether in terms of probatory evidence, of the breadth of the issue raised, or the completeness of the remedy sought, the state claim may be dismissed without prejudice and left for the state court to rule upon and (iii) that there may be independent reasons of jurisdictional considerations.

These scenarios have been classified as examples of Gibb's "animating values", and as such they do not exhaust the range of discretion enjoyed by this Court because the power to exercise it "need not be exercised in every case in which it is found to exist." *13D Fed. Prac. & Proc., pp. 397-398, ¶ 3567.2 (3ed. 2008)*. (citations omitted)

In *Carnegie-Mellon University v. Cohill, 484 U.S. 343, 350, 108 S. Ct. 614, 619, 98 L.Ed. 2d 720 (1988),* the Court restated said values by holding that "a federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity in order to decide whether to exercise jurisdiction over a case brought in that court involving pendent state-law claims. When the balance of these factors indicates that a case properly belongs in state court, as when the federal-law claims have dropped out of

- 14 -

the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction by dismissing the case without prejudice. As articulated by *Gibbs,* the doctrine of pendent jurisdiction thus is a doctrine of flexibility, designed to allow courts to deal with cases involving pendent claims in the manner that most sensibly accommodates a range of concerns and values" (citation omitted) (footnote omitted).

Regarding this section is has been debated whether it lists the only circumstances upon which a court may decline supplemental jurisdiction, or whether it embraces the full scope of discretion allowed by Gibbs. In other words, does § 1367(c) narrow Gibbs and its "animating values," or does it codify it?   Caselaw has established two general categories.

The first approach, which has been adopted by the Second, Third, Eight, Ninth, and Eleventh Circuits, replaces Gibbs and its "animated values" scenarios with an interpretation that unless one of the factors of § 1367(c) is satisfied, the court must exercise supplemental jurisdiction.   This approach does not result in Gibbs "animating values" being rendered irrelevant, since they still will be important in guiding the court's discretion, but only after one of the four statutory factors in said section is satisfied.

On the other side of the spectrum, there is a second approach adopted by the Seventh and District of Columbia Circuits that does

not restrain the discretion recognized by Gibbs.  In the view of these tribunals, § 1367(c) only codified Gibbs and they do not conclude that a court must exercise supplemental jurisdiction anytime it is granted and a specific provision of § 1367(c) does not apply.

Finally, some commentary[4] argue that there is a separate approach adopted by the First, Fourth, Fifth, Sixth, and Tenth Circuits, that posits that these courts draw upon the general discretion under Gibbs "animated values" to a greater scope than the courts utilizing the first approach, but to a lesser scope of the courts utilizing the second approach. *13D Fed. Prac. & Proc., pp. 401-408, ¶ 3567.3 (3ed. 2008)*

D.  **§ 1367(c)(2)**

This section allows a district court to decline exercising jurisdiction if the underlying supplemental "claim substantially predominates over the claim or claims over which the district court has original jurisdiction." In making this predomination inquiry,

---

[4] [T]he First, Fourth, Fifth, Sixth, and Tenth Circuits occupied the middle ground. Those courts did not interpret Section 1367 as a near-mandate to hear state claims, and they relied far more on common law doctrine in their discretionary analysis than the statute. … Additionally, this intermediate analysis departed from both the Executive Software and Gibbs models in its consideration of judicial economy, fairness and convenience. Like the Seventh Circuit model, these courts considered the Gibbs factors in every circumstance, not just those articulated in Section 1367(c). In contrast to that model, however, which ignored the Section 1367 factual predicates, the middle ground … acknowledged the rubric of the statute. The Fifth Circuit, for example, has held that judicial economy alone qualified as a 'compelling reason' in 'exceptional circumstances' under Section 1367(c)(4).

Note, Upside Down and Inside Out: Appellate Review of Discretion Under the Supplemental Jurisdiction Statute, 28 U.S.C. § 1367, 1997 Ann.Surv. Am.Law 661, 683.

the court will assess qualitative, instead of quantitative, factors.

Under said section the First Circuit held that "[d]istrict court did not abuse discretion in refusing, under § 1367(c)(2) and (c)(4), to exercise supplemental jurisdiction over state-law claims where such claims were already pending in separate state-court proceedings." *Che v. Massachusetts Bay Transp. Authority, 342 F.3d 31, 37 (1st Cir. 2003)*.

As will be discussed further on, Triple-S will respectfully request from this Court to apply the "pending in separate court proceedings" factor[5] to its analysis on whether it will exercise or decline supplemental jurisdiction, based upon the fact that Gonzalez's medical malpractice suit is pending before the Caguas Superior Court.[6]

**E. § 1367(c)(3)**

This section allows a district court to decline jurisdiction if it "has dismissed all claims over which it has original jurisdiction."

Although caselaw developed under this section centers around dismissal of the jurisdiction invoking cause of action via a dispositive motion before trial ("District court did not abuse discretion in declining to exercise supplemental jurisdiction over

---

[5] Which Triple-S respectfully argues is also a factor to consider anent the analysis of § 1367(c)(4).
[6] Notwithstanding her misleading statement to the contrary at p. 14, § R. of her motion.

state claims after federal claims were dismissed for failure to state a claim.") *Neff v. Capital Acquisitions & Management Co., 352 F.3d 1118, 1122 (7th Cir. 2003),* ("After granting the defendants' motion for summary judgment on the federal claims, the district court declined to retain jurisdiction over the state law claims. See 28 U.S.C. § 1367(c)(3). Court did not abuse its discretion.") *Eddings v. City of Hot Springs, Ark., 323 F.3d 596, 600 (8th Cir. 2003),* it has also been recognized that "[d]istrict court did not abuse its discretion in declining supplemental jurisdiction and ordering remand to state court **after federal claim was voluntarily dismissed**, even though remand occurred two business days before two-week trial was scheduled to start. Court of appeals noted that it has upheld district court orders dismissing supplemental claims even after five years of discovery. "The fact that the trial was near is not enough to displace the presumption in favor of remand. In short, we find no abuse of discretion." Fact that district judge was familiar with facts and law and that parties had undertaken discovery did not warrant second-guessing the dismissal of supplemental claims. *RWJ Management Co., Inc. v. BP Products North America, Inc., 672 F.3d 476, 480-482 (7th Cir. 2012)* (emphasis added).

**F. § 1367(c)(4)**

This section allows a district court to decline supplemental jurisdiction if "in exceptional circumstances, there are other compelling reason for declining jurisdiction."

The proper framework for this section was explained in *Exec. Software N. Am., Inc. v. U.S. Dist. Court for Cent. Dist. of California, 24 F.3d 1545, 1558,* (1994), where the Court stated that "declining jurisdiction outside of subsection (c)(1)-(3) should be the exception, rather than the rule. Courts therefore must ensure that the reasons identified as 'compelling' are not deployed in circumstances that threaten this principle. The inquiry is not particularly burdensome. A court simply must articulate why the circumstances of the case are exceptional in addition to inquiring whether the balance of the *Gibbs* values provide compelling reasons for declining jurisdiction in such circumstances."

As discussed below, the circumstances surrounding this case are exceptional because Gonzalez and her mother have three (3) pending consolidated medical malpractice cases in state court, that arise from the same nucleus of facts alleged in the third-party complaint at bar that would justify declining supplemental jurisdiction so that those state court cases and the case at bar can be tried in only one proceeding.

**G. <u>Discussion</u>**

In regard to the inapplicability of § 1367(a) to the facts of this case, Triple-S incorporates by reference its analysis at pages 11 thru 13 regarding Gonzalez not meeting the second factor related to her lack of expectations that both the EMTALA invoking jurisdiction case and the medical malpractice cause of action.

But if this Court finds that both factors of § 1367(a) are met, Triple-S argues that pursuant to § 1367(b) to the *Che* case at 342 F. 3d, 37, in which the First Circuit held that declining to exercise jurisdiction over state-law claim was proper, where such claim is already pending in separate state-court cases, should respectfully move this Court to decline supplemental jurisdiction pursuant to this section.

As of today, Gonzalez has her medical malpractice case pending in state court albeit her representation to the contrary. On page 14 of her motion, she claims having "no viable claim pending" today in state court because the Puerto Rico Court of Appeals dismissed her state law claims against Hospital physicians on February 28, 2020. That is a two-fold misleading statement.

First, the dismissal, which Gonzalez attached as Exhibit 1 of her motion, has not become firm and final because pursuant to a "Resolution" issued by the Puerto Rico Supreme Court on March 16, 2020, all deadlines that would have expired in between the dates of March 16 until June 7, were stayed until June 8, 2020. Thus, she has until June 8, 2020 to file a *certiorari* petition to the

Puerto Rico Supreme Court, which she did not confirm or deny will be or not be her course of action in that regard.

Second and most troubling, is that Gonzalez failed to inform to this Court, that only three (3) of the "Hospital physicians" were part of the appeal that reversed the lower court ruling that had denied dismissal of the complaint.

There are five (5) physicians that were sued by Gonzalez in the *Gonzalez Berrios, et al v. Dr. Marmolejo, et al, CG2018cv03354*,[7] ("the 2018 case") to wit: Dr. Alejandro Marmolejo Morales, Dr. Victor Hernandez, Dr. Jose Perez Matamoro, Dr. Hanney Cordero and Dr. Jose Rivera Rivera.  The first three appealed the lower court ruling, which was reversed by the Puerto Rico Court of Appeals, but Dr. Cordero and Dr. Rivera were not part of the appeal[8] and thus remain as defendants in the medical malpractice case that Gonzalez filed against them and is pending in state court, which also includes her mother as a plaintiff.

Moreover, she claims that the parties in the consolidated state court cases had "exchanged little to no written discovery", had not taken depositions and that "a working calendar for the proceedings ahead had to be ironed out.  But an April 26, 2019 minute[9] contradicts said statement.  It arises from the minute,

---

[7] Exhibit 2
[8] Exhibit 3
[9] Exhibit 4

that plaintiff had sent interrogatories to the hospital, that she sent copy of "reports" to defendants, that she inquired whether defendants were going to utilize expert witnesses, that she requested copy of medical records and announces she was going to utilize five (5) expert witnesses.  Finally, various dates were set aside during the months of March, April and May 2020 were set aside to take depositions.

Moreover, Gonzalez, pursuant to the assignment of the hospital's third-party complaint, has her medical malpractice filed under 2019cv00486 ("the 2019 case"), still pending regarding Triple-S.

Finally, Gonzalez's mother, Maria Berrios Rodriguez is a plaintiff in the Berrios Rodriguez v. Hospital General Menonita, EDP2017-0263,[10] which is a medical malpractice case wherein she claims moral damages for the alleged malpractice incurred against her daughter, is also a plaintiff in the 2018 case and is a plaintiff in the 2019 case.

The pendency of all these cases at the state court level predominates over the non-existent original claim that had given this Court's its original jurisdiction.

Apropos of § 1367(c)(3), Triple-S respectfully argues that once Gonzalez moved the Court to enter partial judgment dismissing

---

[10] Exhibit 5

the claim against the hospital before trial, which is now scheduled for March 8, 2011, the language included in the *RWJ Management Co.* case at 672 F.3d 476, where the court decline exercising supplemental jurisdiction after the federal claim was voluntarily dismiss, should weigh in this Court's analysis to decline exercising supplemental jurisdiction.

Finally, Triple-S respectfully requests that pursuant to § 1367(c)(4), this Court finds that the compelling circumstances surrounding this case, that include the plethora of state court cases filed alleging the same common nucleus of facts as Gonzalez's third-party complaint, is exceptional and warrants that all cases be tried on the Caguas Superior Court.

As stated in the *Carnegie-Mellon* case at 484 U.S. 343, the doctrine of pendent jurisdiction is one of flexibility "designed to allow courts to deal with cases involving pendent claims in the manner that most sensibly accommodates a range of concerns and values." For example, if the third-party complaint were to remain in this Court, Gonzalez will have to try the case in this forum and then try her and her mother's consolidated cases in state court, which would entail double efforts, double expenditure in relation to utilizing expert witnesses who would have to testify in the federal case and then in the state court cases.

Upon balancing all of the foregoing factors, Triple-S most respectfully requests from this Court, that pursuant to the

discretion and flexibility provided by the statute and jurisprudence, to decline exercising supplemental jurisdiction.

**RESPECTFULLY SUBMITTED.**

In San Juan, Puerto Rico, this 14th day of May 2020.

**I HEREBY CERTIFY** that on even date the undersigned sent copy of the foregoing to all attorneys of record thru the CM/ECF System.

**DELGADO & FERNÁNDEZ, LLC**
*Attorneys for Triple-S Propiedad, Inc.*
PO Box 11750
Fernández Juncos Station
San Juan, PR 00910-1750
Tel. (787)274-1414
Fax: (787)764-8241

s/MIGUEL G. LAFFITTE, ESQ.
USDC-PR-202309
mlaffitte@delgadofernandez.com